FILED
 2012 Oct-16  PM 03:51
U.S. DISTRICT COURT
    N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **ADAM HOLLINGSWORTH,** ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> **MICHAEL J. ASTRUE,** ) <br> **COMMISSIONER OF SOCIAL** ) <br> **SECURITY** ) <br> **ADMINISTRATION,** ) <br> ) <br> Defendant. ) <br> ) | Civil Action Number <br> **4:11-cv-3949-AKK** |

## MEMORANDUM OPINION

Plaintiff Adam Hollingsworth ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA").  This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence and, therefore, **AFFIRMS** the decision denying benefits.

### I. Procedural History

Plaintiff filed his applications for Title II disability insurance benefits and

Title XVI Supplemental Security Income on December 30, 2009, alleging a disability onset date of April 5, 2009, due to "tear in right foot" and "pain in both knees." (R. 84, 109-117,131). After the SSA denied his applications on May 18, 2010, Plaintiff requested a hearing. (R. 86-90, 100-104). At the time of the hearing on July 7, 2011, Plaintiff was 29 years old, had a GED, and past relevant work that included semi-skilled work as a stocker and very heavy and skilled work as a door builder. (R. 69, 80). Plaintiff has not engaged in substantial gainful activity since April 5, 2009. (R. 13).

The ALJ denied Plaintiff's claim on July 19, 2011, (R. 8), which became the final decision of the Commissioner when the Appeals Council refused to grant review on November 4, 2011, (R. 1-5). Plaintiff then filed this action pursuant to section 1631 of the Act, 42 U.S.C. § 1383(c)(3). Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if

supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis.  20 C.F.R. § 404.1520(a)-(f).  Specifically, the Commissioner must determine in sequence:

>    (1)   whether the claimant is currently unemployed;
>
>    (2)   whether the claimant has a severe impairment;
>
>    (3)   whether the impairment meets or equals one listed by the Secretary;
>
>    (4)   whether the claimant is unable to perform his or her past work; and
>
>    (5)   whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'"  *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to

prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV.  The ALJ's Decision

In performing the Five Step sequential analysis, the ALJ determined initially that Plaintiff had not engaged in substantial gainful activity since his alleged onset date and therefore met Step One.  (R. 13).  Next, the ALJ acknowledged that Plaintiff's severe impairments of lumbago, chronic obstructive pulmonary disease, facet arthropathy, obesity, and plantar fibromatosis met Step Two.  (R. 13).  The ALJ then proceeded to Step Three where he found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments."  (R. 14).  Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four where he determined that Plaintiff "has the residual functional capacity to perform the full range of sedentary work."  (R. 14).  In light of Plaintiff's RFC, the ALJ held that Plaintiff was "unable to perform any past relevant work."  (R. 17).  The ALJ then moved to Step Five where he considered Plaintiff's age, education, experience, and RFC, and determined that "jobs . . . exist in significant numbers in the national economy that the claimant can perform."  (R. 18).  As a result, the ALJ answered Step Five in

the negative and found that Plaintiff is not disabled. (R. 24-25); *see also*

*McDaniel*, 800 F.2d at 1030.

## V.  Analysis

Plaintiff's sole contention is that the ALJ committed reversible error by assigning consulting examiner Dr. Henry Born's opinion "substantial weight" and "failing to provide good cause for the rejection of the opinion of the claimant's treating physician, Dr. Odjegba."[1]  Doc. 8 at 5-12.  Indeed, the ALJ found as follows as to these two physicians:

> [T]he findings of Dr. Born are given substantial weight.  Dr. Born is deemed by regulation to be a 'highly qualified expert in Social Security disability evaluation.'  As his findings are uncontradicted by other objective medical evidence, they are entitled to substantial weight.
>
> However, the opinion of Dr. Odjegba is given little weight.  This opinion is unsupported by any available medical records, and the assessment of debilitating pain is inconsistent with his own objectively reported findings and with other treating source medical evidence within the record.  For these reasons, this opinion is given little weight.

(R. 17).  Plaintiff disagrees with the ALJ's assessment and contends that the ALJ should have assigned substantial weight to Dr. Odjegba's opinion.  In light of Plaintiff's contention, the court will review first Dr. Odjegba's treatment notes and

---

[1] Dr. Odjegba's first name is not listed in the record.

then the remaining record evidence.

A.   Dr. Odjegba's treatment notes

On December 9, 2010, Dr. Odjegba evaluated Plaintiff at Quality of Life for chest tightness and congestion and lower back pain that rates a 7 out of 10 after "just mov[ing] [into his] house." (R. 229). Dr. Odjegba reported that Plaintiff's respiratory tract had "very poor air movement" and that his back and spine were "positive for posterior tenderness. Paravertebral muscle spasm. Bilateral lumbosacral tenderness," and "bilateral tenderness from L3 to L4." (R. 230). Dr. Odjegba diagnosed Plaintiff with chronic bronchitis and lumbago/acute muscle strain and prescribed Albuterol, Flexeril, ibuprofen, Zithromax, and Trexbrom. Dr. Odjegba also ordered a pulmonary functioning test that revealed that Plaintiff has a "severe airway obstruction, with low vital capacity. Post bronchodilator test not improved." (R. 232, 235).

The next month, on January 7, 2011, Plaintiff presented to Dr. Odjegba again with lower back pain that is "worse with sitting up" and "helped by Flexeril and Motrin." (R. 232). Dr. Odjegba noted also that Plaintiff's "spine is positive for posterior tenderness. Paravertebral muscle spasm. Bilateral lumbosacral tenderness. Lumbar palpitation reveals bilateral tenderness," and that Plaintiff had poor air movement, for which Dr. Odjegba prescribed Spiriva and Advair. (R.

233). That same month, Plaintiff received x-rays of his lumbar spine that revealed "facet arthropathy L3-L4."[2] (R. 238).

On May 27, 2011, Dr. Odjegba completed a clinical assessment of pain and opined that Plaintiff's "pain is present, irretractable, and incapacitating," that activity "increased [his] pain to such a degree as to preclude basic work activities on a sustained basis," and that Plaintiff "can be expected to miss 25-30 days per year from work" due to his "severe lower back pain and spasms (etiology uncertain - cannot afford MRI)." (R. 241-42). Dr. Odjegba also completed a disability questionnaire in which he opined that Plaintiff was disabled pursuant to the regulations and that the disability was expected to last for "years" due to his "severe lumbago with muscle spasm" and "chronic bronchitis."[3] (R. 243).

Generally, because a treating physician provides a "longitudinal picture" of the claimant's impairments, his assessment is entitled to more weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic

---

[2] A facet is a small plane surface on a bone and arthropathy is any joint disease. Sanders Elsvier, Dorland's Illustrated Medical Dictionary 160, 676 (31st ed. 2007).

[3] Dr. Odjegba stated in his disability evaluation that he treated Plaintiff four times. (R. 243). However, the treatment notes reflect that Dr. Odjegba evaluated Plaintiff twice at Quality of Life and a Nurse West evaluated Plaintiff twice at Canterberry on August 11 and 25, 2009. (R. 187, 190). Because the format of the treatment notes appear identical to each other and because Nurse West evaluated Plaintiff also at Quality of Life in July 2010, doc. 226, perhaps these two clinics are jointly owned. Therefore, to the extent that Dr. Odjegba and Nurse West evaluated Plaintiff together, that is not reflected by the record.

techniques and is not inconsistent with the other substantial evidence in [the] record" and the ALJ must provide sound reasons for rejecting it. *See* 20 C.F.R. § 404.1527(c)(2). Further, "the longer a treating source has treated" a claimant, "the more weight we will give to that source's medical opinion." *Id*. at (c)(2)(I). However, an ALJ can reject a treating physician's assessment when the physician failed to present "relevant evidence to support an opinion." *See id*. at (c)(3). This is precisely the case here and why the ALJ's decision to reject Dr. Odjegba's May 27, 2011 report is supported by substantial evidence.

Specifically, Dr. Odjegba's treatment notes fail to establish a "longitudinal picture" of Plaintiff's impairment because Dr. Odjegba evaluated Plaintiff only twice over a two month period of time in December 2010 and January 2011, and perhaps, assuming QOL and Canterberry are the same, two other times with Nurse West in August 2009 for ankle and heel pain. (R. 187, 190); *see* 20 C.F.R. § 404.1527(c)(2). Moreover, regarding Plaintiff's back pain, Dr. Odjegba's examinations consisted solely of palpating Plaintiff's back because Dr. Odjegba only reported tenderness in Plaintiff's lumbosacral region of his back. Dr. Odjegba failed to perform straight leg raises, range of motion tests, or other objective tests to determine the severity of Plaintiff's pain and his ability to sustain activity. Lastly, although Plaintiff's January 2011 x-ray revealed facet arthropathy

at L3-L4, without more, that diagnosis is not determinative of a disabling impairment, especially in light of the fact that Plaintiff stated that his pain was "helped by Flexeril and Motrin." (R. 232).

As related to Plaintiff's respiratory impairment, even though Plaintiff's chronic bronchitis is a severe condition, the record does not support a finding that it has "lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). Indeed, the only evidence of Plaintiff's respiratory impairment is Dr. Odjegba's December 2010 and January 2011 treatment notes and, in fact, as discussed below, Plaintiff's other respiratory examinations were negative. Therefore, the ALJ's decision to assign Dr. Odjegba's opinion "little weight" is supported by substantial evidence.

B.     The record as a whole fails to support Plaintiff's disability claim

A review of the record as a whole supports the ALJ's findings. In that regard, the record reflects that on February 11, 2009, Plaintiff visited Gadsden Regional Medical Center because he felt like his throat was closing. (R. 248). The treating physician reported no "sensation of airway closure," "no evidence of airway compromise," and "no respiratory distress. Lungs clear with equal breath sounds bilaterally." (R. 249). Plaintiff was diagnosed with an "acute allergic reaction," prescribed Benadryl, and discharged in stable condition. (R. 249-250).

The next medical entry occurred on August 11, 2009, when Plaintiff visited Canterberry Family Practice and was evaluated by nurse practitioner Richard West for "mild" pain in his right foot that intensifies when standing and "pain at [the] posterior ankle." (R. 187-88). Plaintiff's x-rays revealed "no sig[nificant] abnormality" and he was prescribed Medrol and Naprosyn. (R. 189, 192). Later that month, Plaintiff again visited Canterberry for right foot pain "mostly in the heel now." (R. 190). Nurse West evaluated Plaintiff and diagnosed him with plantar fibromatosis and prescribed stretching exercises and a spenco orthotic for hard shoes. (R. 191).

The next year, on March 15, 2010, Dr. Henry Born completed a consultative examination regarding Plaintiff's "pain in his right heel" and reported that Plaintiff had (1) clear lungs, (2) an "impaired" gait using a cane, (3) right heel pain and tenderness, (4) normal range of motion in the cervical spine, shoulders, elbows, wrists, hands, fingers, hips, knees, ankles, and feet, (5) intact strength in his lower extremities, (6) no atrophy or fasciculation in his extremities and no swelling, erythema, or tenderness in his joints, (7) symmetrical reflexes, (8) normal dorsolumbar flexion, extension, and rotation, and (9) negative right and left straight leg raises 60 degrees. (R. 194-95). Dr. Born reported that Plaintiff could squat and rise with most of the weight on his left foot, that his right foot x-rays

revealed no degenerative or sclerotic changes or bone spurs and had well maintained joint spaces, and diagnosed Plaintiff with "probably bursitis, right heel." *Id*. Significantly, Dr. Born reported that Plaintiff "has had no medical attention," "has not seemed to make that much of an effort to have any real treatment here," and that "[p]erhaps a cortisone shot would help this situation considerably." (R. 195-96).[4]

Regarding Dr. Born's opinion, initially, the court notes that Plaintiff presented to Dr. Born only with heel pain and, therefore, Dr. Born did not specifically address Plaintiff's back pain except to note a full range of motion in Plaintiff's cervical spine. Nonetheless, Dr. Born's opinion is substantiated by his treatment notes because, although Dr. Born examined Plaintiff only once, unlike Dr. Odjegba, he undertook a thorough examination and provided clinical data to support his opinion, i.e., range of motion, straight leg raise, and squat/stand tests, and an examination of the extremities. Further, as related to Plaintiff's heel pain,

---

[4]On July 6, 2010, Plaintiff again visited Gadsden Regional for lower left quadrant abdominal pain due to a kidney stone. (R. 207, 213). Importantly, the treating physician observed that Plaintiff's lungs were "clear with equal breath sounds bilaterally" and his spine was "non-tender," prescribed Plaintiff hydrocordone for pain, discharged Plaintiff in stable condition, and instructed him "to obtain follow up care in two days." (R. 214). Later that month, Nurse West evaluated Plaintiff again, this time at QOL instead of Canterberry, for diarrhea and vomiting after passing a kidney stone and noted that Plaintiff was "negative for cough, dyspnea, and wheezing," that his lungs were "clear to percussion and auscultation," and prescribed Plaintiff Loperamide for diarrhea, Dicyclomine for irritable bowel syndrome, and Promethazine for allergic rhinitis. (R. 226-28).

Dr. Born's bursitis diagnosis is supported by Plaintiff's x-rays that revealed no abnormalities.  Moreover, Dr. Born's opinion is consistent with Nurse West's evaluations of Plaintiff's foot and heel pain.  *See* 20 C.F.R. § 404.1527(6) ("When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, [ ], which tend to support or contradict the opinion."). Therefore, the ALJ's decision to assign Dr. Born's opinion "substantial weight" is supported by substantial evidence.

Ultimately, Plaintiff has the burden of proving that he is disabled.  *See* 20 C.F.R. § 416.912(c).  Unfortunately for Plaintiff, the record as a whole is sparse and does little to support Plaintiff's disability claim.  Regarding Plaintiff's foot, ankle, and heel pain, although Plaintiff's gait was impaired, the x-rays were negative, he had normal range of motion in his extremities, and there is no evidence in the record suggesting that the prescribed treatment proved ineffective. In fact, presumably, Plaintiff's treatment resolved his foot, ankle, and heel pain because Plaintiff never raised these issues to Dr. Odjegba.  Further, Plaintiff's examinations failed to reveal any signs of respiratory distress or back pain prior to his first visit with Dr. Odjegba in December 2010.  In fact, Dr. Born noted in March 2010 that Plaintiff had a non-tender spine and clear lungs.  In the final analysis, the record evidence simply does not support Plaintiff's disability claim.

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Hollingsworth is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

Done the 16th day of October, 2012.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE